UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA,         :
:
- v. -              :            _____
:
PLUTARCO ANGULO-AGUIRRE,          :
a/k/a "Matatan,"             :
a/k/a "Platano,"             :    S4 07 Cr. 387 (CM)
RAFAEL RODRIGUEZ,                 :
a/k/a "Dance,"               :
ANGEL DIAZ,                       :
a/k/a "Pete,"                :
VICTOR DIAZ,                      :
a/k/a "Gago,"                :
SAILE PARRA, and                 :
JORGE CEDENO,                     :
:
Defendants.    :
- - - - - - - - - - - - - - - - x


**SECOND MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO DEFENDANTS' PRETRIAL MOTIONS**


MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007


Nola B. Heller
Assistant United States Attorney
-Of Counsel-

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.   Offense Conduct . . . . . . . . . . . . . . . . . . 3

    B.   Post-Indictment Discovery. . . . . . . . . . . . . .5

ARGUMENT

    I.   DEFENDANTS' REQUESTS FOR A BILL OF PARTICULARS SHOULD
        BE DENIED . . . . . . . . . . . . . . . . . . . . . 9

    II.  DEFENDANTS' DISCOVERY REQUESTS SHOULD BE DENIED. . . 14

        A.   Co-Defendant Statements . . . . . . . . . . . 15

        B.   <u>Brady</u> Material . . . . . . . . . . . . . . .17

        C.   <u>Giglio</u> and Jencks Act Material. . . . . . . . 20

        D.   Rule 404(b) Material . . . . . . . . . . . . .23

        E.   Polygraph Reports . . . . . . . . . . . . . . 25

    III. DEFENDANTS' MOTIONS TO SUPPRESS IDENTIFICATIONS SHOULD
        BE DENIED . . . . . . . . . . . . . . . . . . . . .26

        A.   Applicable Law . . . . . . . . . . . . . . . .27

        B.   Angel Diaz's and Victor Diaz's Motions for
            Suppression of Identification Evidence, or
            Alternatively for a Hearing, Should Be Denied . 30

        C.   Jorge Cedeno's Motion to Suppress Identification
            Evidence Affected by or Derived From Photo Array
            Should Be Denied . . . . . . . . . . . . . . .32

    IV.  ANGEL DIAZ'S AND VICTOR DIAZ'S MOTIONS FOR SEVERANCE
        SHOULD BE DENIED . . . . . . . . . . . . . . . . . 36

        A.   Applicable Law . . . . . . . . . . . . . . . .36

        B.   Severance Is Not Appropriate in this Case . . . 40

    V.   JORGE CEDENO'S STATEMENTS ARE ADMISSIBLE FOR
        IMPEACHMENT PURPOSES . . . . . . . . . . . . . . . 44

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 46

**PRELIMINARY STATEMENT**

The United States of America respectfully submits this memorandum of law in opposition to the pretrial motions of defendants Angel Diaz, Victor Diaz, and Jorge Cedeno.

Defendants Plutarco Angulo-Aguirre and Rafael Rodriguez submitted pretrial motions on August 22, 2007 and August 21, 2007, respectively, and the Government responded to those motions in a brief filed on September 6, 2007. After Angulo-Aguirre's and Rodriguez's motions were fully submitted, on September 17, 2007, the Government unsealed a Superseding Indictment that added three new defendants to the case, including Angel Diaz and Victor Diaz. On November 16, 2007, the Government unsealed a second Superseding Indictment which added two more defendants, including Jorge Cedeno.

The Court set a new motions schedule at a pretrial conference held on November 20, 2007, and reserved decision on Angulo-Aguirre's and Rodriguez's motions until all other remaining defendants had submitted their motions, which were due on or before January 29, 2008. In this brief, the Government responds only to the motions of Angel Diaz, Victor Diaz, and Jorge Cedeno. The Government respectfully refers the Court to its brief of September 6, 2007 for responses to the motions of

Plutarco Angulo-Aguirre and Rafael Rodriguez.[1]  In its September 6, 2007 brief, the Government consented to a hearing on one of Rodriguez's motions.  That hearing is currently scheduled for April 2, 2008.

Defendants Angel Diaz, Victor Diaz, and Jorge Cedeno move this Court to: order the Government to provide a Bill of Particulars; direct the Government to produce extraordinary additional and/or early discovery, including, inter alia, Brady Giglio, Jencks Act, and Rule 404(b) material, as well as co-defendant statements; and suppress identification testimony, or, if necessary, hold a pretrial hearing on the matter of identification testimony.  Defendants Angel Diaz and Victor Diaz also each move the Court to sever his trial from that of his co-defendants; and to permit him to file further motions and to join in the motions of his co-defendants.  Defendant Victor Diaz further moves the Court to order the Government to disclose polygraph reports; and defendant Cedeno further moves this Court to suppress certain post-arrest statements.

Defendants Angel Diaz's and Victor Diaz's motions are without merit and, for the reasons set forth below, should be denied.  Defendant Cedeno's motions are also without merit, except that the Government concedes that Cedeno's statements are

---

[1] None of the other four defendants in the case filed motions.

2

not admissible in the Government's case-in-chief.  Those statements would be admissible on cross-examination, however, should Cedeno testify to the contrary.

**BACKGROUND**

**A.    Offense Conduct**

Defendants Plutarco Angulo-Aguirre, Rafael Rodriguez, Angel Diaz, Victor Diaz, Saile Parra, and Jorge Cedeno have been charged in an eight-count Superseding Indictment, S4 07 Cr. 387.[2]

Count One charges Angulo-Aguirre, Rodriguez, Angel Diaz, Victor Diaz, Saile Parra, and Jorge Cedeno with conspiring to violate Section 1201(a) of Title 18, United States Code. Specifically, the Superseding Indictment charges that (1) Angulo-Aguirre, Rodriguez, Angel Diaz, and Victor Diaz, together with others known and unknown, kidnapped two individuals in or around Blauvelt, New York, on or about September 13, 2006 and transported them to in or around Clifton, New Jersey; (2) Rodriguez, Parra, and Cedeno, together with others known and unknown, kidnapped an individual in or around Allamuchy Township, New Jersey on or about November 13, 2006 and transported the individual to in or around the Bronx, New York; and (3) Angulo-Aguirre, Rodriguez, Victor Diaz, Parra, and Cedeno, together with

---

[2] Defendants German Cuadrado, Jorge Flores, and Juan Camacho, who were previously charged under this Indictment number, have pleaded guilty.  Defendant Saile Parra did not file any motions.

others known and unknown, kidnapped an individual in or about Pine Grove, Pennsylvania on or about November 14, 2006 and transported the individual to in or around Paterson, New Jersey, in violation of Title 18, United States Code, Section 1201(c).

Count Two charges Angulo-Aguirre, Rodriguez, Angel Diaz, and Victor Diaz, together with others known and unknown, with kidnapping two individuals in or around Blauvelt, New York, on or about September 13, 2006, and transporting them to in or around Clifton, New Jersey, in violation of Title 18, United States Code, Sections 1201(a) and 2.

Count Three charges Rodriguez, Parra, and Cedeno, together with others known and unknown, with kidnapping an individual in or around Allamuchy Township, New Jersey on or about November 13, 2006, and transporting the individual to in or around the Bronx, New York, in violation of Title 18, United States Code, Sections 1201(a) and 2.

Count Four charges Angulo-Aguirre, Rodriguez, Victor Diaz, Parra, and Cedeno with conspiring, together with others known and unknown, to violate Section 1951(a) of Title 18, United States Code, by committing armed robberies of three trucks in or around Blauvelt, New York, Allamuchy Township, New Jersey, and Pine Grove, Pennsylvania, in violation of Title 18, United States Code, Section 1951(a).

4

Count Five charges Angulo-Aguirre, Rodriguez, Angel Diaz, and Victor Diaz, together with others known and unknown, with the armed robbery of two truck drivers of a truckload of perfume on or about September 13, 2006 in or around Blauvelt, New York, in violation of Title 18, United States Code, Section 1951(a) and 2.

Count Six charges Rodriguez, Parra, and Cedeno, together with others known and unknown, with the armed robbery of a truck driver of cellular phones, in or around Allamuchy Township, New Jersey and in or around the Bronx, New York.

Count Seven charges Angulo-Aguirre, Rodriguez, and Angel Diaz with using, carrying and brandishing firearms on or about September 13, 2006, during and in relation to crimes of violence, namely the crimes charged in Counts One, Two, Four, and Five of the Superseding Indictment.

Count Eight charges Rodriguez and Cedeno with using, carrying and brandishing firearms on or about November 13, 2006, during and in relation to crimes of violence, namely the crimes charged in Counts Three and Six of the Superseding Indictment.

**B.    Post-Indictment Discovery**

On or about July 12, 2007, the Government produced discovery to Angulo-Aguirre and Rodriguez, as set forth in the Government's brief of September 6, 2007.

On or about October 4, 2007, the Government produced discovery to Angel Diaz and Victor Diaz. Defendants Angel Diaz and Victor Diaz each received from the Government: the Superseding Indictment S1 07 Cr. 387; his own criminal history report; telephone records from September 2006; bills of lading for the truck stolen on September 13, 2006; global positioning satellite results from September 2006; results of fingerprint analysis; and a photo array from which certain individuals identified each defendant[3]. Victor Diaz also received copies of various items taken from him upon his arrest on or about September 15, 2007. The Government also made available for inspection photographs taken on or about September 13 and 14, 2007. Additionally, in its July 12, 2007 letter, the Government included a paragraph containing information the Government disclosed pursuant to its obligations under Brady v. Maryland, 373 U.S. 83 (1963). Finally, the Government notified Victor Diaz that it may introduce evidence of his uncharged crimes pursuant to Federal Rule of Evidence 404(b), specifically, his involvement in the thefts of other trucks.

On or about October 24, 2007, the Government provided additional discovery to Angulo-Aguirre, Rodriguez, Angel Diaz, and Victor Diaz, specifically, copies of several photographs

---

[3] Angel Diaz and Victor Diaz each received only the photo array containing his own photograph.

6

recovered from the computer of one of the defendants' co-conspirators.

On or about December 11, 2007, after the unsealing of the Government's second Superseding Indictment, S4 07 Cr. 387, the Government provided additional discovery to all defendants. Specifically, Angulo-Aguirre, Rodriguez, Angel Diaz, and Victor Diaz each received from the Government: the second Superseding Indictment; results of a DNA test from the truck hijacked on or about November 13, 2006; bills of lading from the truck hijacked on or about November 13, 2006; printouts of documents tracking movements of the truck hijacked on or about November 13, 2006; bills of lading for the truck hijacked on or about November 14, 2006; printouts of documents tracking movements of the truck hijacked on or about November 14, 2006; and telephone records from September 2006 and November 2006. Each defendant also received a copy of his United States Marshals Service intake form. The Government also made available for inspection photographs taken of the crime scenes, victims, and evidence from each of the three robbery/kidnappings. Finally, the Government made certain defendants aware of the fact that victims in the case were unable to identify their photographs from a photo array. On or about December 11, 2007, Jorge Cedeno received the above items as initial discovery. He also received from the Government copies of all of the items disclosed to Angel Diaz and

7

Victor Diaz on or about October 4, 2007 and October 24, 2007, as described above.  Cedeno also received copies of agent notes taken during interviews with Cedeno on or about January 3, 2007 and February 9, 2007; copies of documents in Cedeno's possession when he was arrested on November 15, 2007; and copies of a Miranda waiver form and a consent to search form signed by Cedeno on November 15, 2007.[4]  Additionally, in its December 11, 2007 letter, the Government included the same paragraph containing information the Government disclosed pursuant to its obligations under Brady v. Maryland, 373 U.S. 83 (1963) that was previously provided to the other defendants.  Finally, the Government notified Jorge Cedeno that it may introduce evidence of his uncharged crimes pursuant to Federal Rule of Evidence 404(b), specifically, his involvement in the thefts of other trucks.

On or about January 9, 2008, the Government produced to Angulo-Aguirre, Rodriguez, Angel Diaz, Victor Diaz, Parra, and Cedeno copies of cell site information and telephone records dating from September 2006 and November 2006.

On or about January 24, 2008, the Government produced to Angulo-Aguirre, Rodriguez, Angel Diaz, Victor Diaz, Parra, and Cedeno copies of additional cell site information and telephone records dating from September 2006 and November 2006; and a

---

[4] Parra also received initial discovery on or about December 11, 2007.  He has not made a motion in this case.

photograph of items seized from the truck of a vehicle occupied by Rodriguez and Jorge Flores on or about January 3, 2007.[5]

## ARGUMENT

### I.    DEFENDANTS' REQUESTS FOR A BILL OF PARTICULARS SHOULD BE DENIED

Angel Diaz, Victor Diaz, and Jorge Cedeno each seek a bill of particulars.  See Angel Diaz Notice of Mot. at 1, Mem. of Law at 2; Victor Diaz Notice of Mot. at 1, Mem. of Law at 2; Jorge Cedeno Notice of Mot. at 1, Mem. of Law at 6-7. Specifically, Angel Diaz and Victor Diaz each request a bill of particulars setting forth specific acts or omissions "which evince a knowing and willful combining or conspiring to commit the crimes of kidnapping and Hobbs Act robbery; or the knowing and willful commission of the underlying substantive offense charged," including the date, time, and location of the defendant's joining the conspiracy charged or committing the substantive acts alleged.  Angel Diaz Notice of Mot. at 1; Victor Diaz Notice of Mot. at 1.  Cedeno requests additional detail as to the specific acts of Cedeno and his co-defendants; the specific locations where the relevant events took place; and the names of the alleged victims and of the trucking companies for

---

[5] The letter included a typographical error providing that the items were seized on January 3, 2006.  The items were actually seized on January 3, 2007.

which they worked.  See Cedeno Mem. of Law at 6-7.  Defendants'
requests should be denied.

It is well established that the proper scope and
function of a bill of particulars is to provide sufficient
information about the nature of the charge to enable a defendant
to prepare for trial, to avoid unfair surprise, and to preclude a
second prosecution for the same offense.  Fed. R. Crim. P. 7(f);
United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990); United
States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987).  "A bill
of particulars should be required only where the charges of the
indictment are so general that they do not advise the defendant
of the specific acts of which he is accused."  Torres, 901 F.2d
at 234 (internal quotation marks omitted).

If the information the defendant seeks "is provided in
the indictment or in some acceptable alternate form," such as
discovery, no bill of particulars is required.  Bortnovsky, 820
F.2d at 574; United States v. Morales, 280 F. Supp. 2d 262, 274
(S.D.N.Y. 2003).  In other words, the defense cannot use a bill
of particulars as a general investigative tool, United States v.
Salazar, 485 F.2d 1272, 1277-78 (2d Cir. 1973), or as a device to
compel disclosure of the Government's evidence prior to trial.
See Triana-Mateus, No. 98 Cr. 958 (SWK), 2002 WL 562649, at *5
(S.D.N.Y. Apr. 15, 2002) (citing United States v. Gottlieb, 493
F.2d 987, 994 (2d Cir. 1974)).  "The Government is not required

10

to disclose the manner in which it will attempt to prove the charges, nor the means by which the crimes charged were committed, [therefore] 'the Government is not required to provide information that would, in effect, give the defendant a preview of the Government's case before trial.'" Id. at *5 (quoting United States v. Conley, No. 00 Cr. 0816 (DAB), 2002 WL 252766, at *4 (S.D.N.Y. Feb. 21, 2002)).

Under the relevant legal standard, the Government is not required to (a) "particularize all of its evidence," United States v. Cephas, 937 F.2d 816, 823 (2d Cir. 1991); (b) disclose the precise manner in which the crimes charged in the indictment were committed, see Torres, 901 F.3d at 233-34 (demands for "whens" and "wheres" and "by whoms" within charged conspiracy are improper attempts at general pretrial discovery); or (c) provide the defendant with a preview of the Government's case or legal theory. United States v. Muyet, 945 F. Supp. 586, 598-599 (S.D.N.Y. 1996). The ultimate test is whether the information sought is necessary, not whether it is helpful. See United States v. Trippe, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001); Conley, 2002 WL 252766, at *4. Additionally, in a case involving violent crimes such as the instant case, defendants are not entitled to disclosure of the names of victims or other potential witnesses because such witnesses might be endangered by early disclosure. See United States v. Gotti, No. S4 02 Cr. 743 (RCC),

11

2004 U.S. Dist. LEXIS 45, at *28-29 (S.D.N.Y. Jan. 6, 2004);
United States v. Sindone, No. 01 Cr. 517 (MBM), 2002 U.S. Dist.
LEXIS 388, at *3-*5 (S.D.N.Y. Jan. 14, 2002); United States v.
Kevin, No. 97 Cr. 763 (JGK), 1999 U.S. Dist. LEXIS 5728, at *37-
*38 (S.D.N.Y. Apr. 7, 1999).

　　　　In this case, there is no danger that Angel Diaz,
Victor Diaz, and Jorge Cedeno will suffer from unfair surprise at
trial.  They have received ample information about the crimes
charged in the Indictment.  First, the Government has produced
several hundred pages of discovery to each defendant.  As
detailed supra pp. 5-8, defendants received, inter alia, detailed
information regarding each hijacked truck, including the contents
stolen from each truck, the routes traveled by each truck, and
the results of various DNA and fingerprint examinations
conducted.  Defendants were given access to photographs taken in
conjunction with the September 13, 2006 and November 13, 2006
robberies/kidnappings, as well as access to evidence recovered
from all three hijacked trucks, and evidence recovered from
Rodriguez and Jorge Flores on or about January 3, 2007.
Defendants were also provided with voluminous telephone records
that detailed communication between various defendants in the
case, as well as recorded the location of the users of several
telephones during each robbery/kidnapping.  Additionally, the
charges themselves are pled with specificity.  The Superseding

Indictment details where and when each truck was robbed; the contents of each truck; the fact that each robbery was armed; the locations where the kidnapped victims were transported; and the names of the indicted perpetrators of each hijacking and kidnapping.  Finally, the kidnapping conspiracy count enumerates overt acts that Angel Diaz, Victor Diaz, and Jorge Cedeno are accused of committing in furtherance of that conspiracy.

Despite the detailed allegations and the extensive discovery provided by the Government, defendants seek further information.  Their requests for a bill of particulars are transparent attempts to obtain additional, detailed discovery about the charged crimes, and they are not entitled to such information.  See Torres, 901 F.3d at 233-34; United States v. Sindone, 2002 U.S. Dist. LEXIS 388, at *3 ("The stakes in a criminal case are high, and temptations of perjury, subornation and intimidation are ever present.  Accordingly, the government is not required to turn over information that will permit a defendant to preview the government's case and tempt him to tailor proof to explain it away, or see to it that the government's proof is not presented."); United States v. Bin Laden, 92 F. Supp. 2d 225, 242 (S.D.N.Y. 2000) ("[R]equests, such as those made by the Defendants here, for particulars as to when, where, how, and with whom each individual defendant joined an alleged conspiracy have 'almost uniformly been denied.'" (quoting

13

<u>United States v. Wilson</u>, 565 F. Supp. at 1438)); <u>United States v.</u>
<u>Feola</u>, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987) ("Details as to
how and when the conspiracy was formed, or when each participant
entered it, need not be revealed before trial.").

Taken together, the materials already provided give
defendants ample opportunity to prepare their defenses and leave
no possibility of unfair surprise.  Accordingly, the defendants'
requests to obtain unauthorized discovery through a bill of
particulars should be denied.

## II.  <u>DEFENDANTS' DISCOVERY REQUESTS SHOULD BE DENIED</u>

Defendants Angel Diaz, Victor Diaz, and Jorge Cedeno
have made motions setting forth multiple requests for additional
discovery.  At the outset, the Government notes that it has, as
described in the Background Section of this Memorandum, already
produced discovery to each defendant pursuant to Federal Rule of
Criminal Procedure 16.[6]  In any event, as set forth below,
because the defendants' respective discovery requests are either
moot, premature, or not required by any statute or the Federal
Rules of Criminal Procedure, the Government respectfully submits
that these requests be denied.

---

[6] Of course, the Government recognizes that its obligation
to provide discovery is of a continuing nature, and the
Government will, if it obtains additional evidence, supplement
its production of material required by Rule 16(a)(1)(A) and any
other provision of Rule 16, for that matter.

## A.  Co-Defendant Statements

Defendants Angel Diaz, Victor Diaz, and Cedeno each request that the Government disclose any statements by their co-defendants, in order to assess whether any issues will arise at trial under Bruton v. United States, 391 U.S. 123 (1968).  See Angel Diaz Mem. of Law at 3; Victor Diaz Mem. of Law at 4; Jorge Cedeno Notice of Mot. at 1, Mem. of Law at 10-11.  These motions should be denied.

In Bruton, the Supreme Court held that the Confrontation Clause of the Sixth Amendment prohibits the introduction of the confession of a non-testifying co-defendant that implicates the defendant.  Id. at 126.  A court cannot cure the introduction of such a statement through a limiting instruction.  Id. at 137.  In Richardson v. Marsh, 481 U.S. 200 (1987), however, the Court limited the reach of Bruton by holding that when a confession is redacted so that it does not facially incriminate the defendant, its admission with a proper limiting instruction does not violate the Confrontation Clause.

Defendants' request for co-defendant statements in this case is premature.  Additionally, as defendant Cedeno notes, see Cedeno Mem. of Law at 11, the Government is not obligated under Rule 16 to disclose co-conspirator statements.  See United States v. Robles, No. 04 Cr. 1036 (GEL), 2005 U.S. Dist. LEXIS 7168, at *4-*5 (S.D.N.Y. Apr. 22, 2005) ("No specific discovery rule

15

requires the Government to produce to defendants statements made by co-defendants that might raise issues under <u>Crawford v. Washington</u>, 547 U.S. 36 (2004), or <u>Bruton v. United States</u>, 391 U.S. 123 (1968).  It is wise, of course, for the Government to produce such materials in sufficient time for issues regarding such statements to be resolved pre-trial . . . .”); <u>see also United States v. Stein</u>, 424 F. Supp. 2d 720, 727 (S.D.N.Y. 2006) (finding that <u>Bruton</u> and <u>Crawford</u> “do not mandate pretrial disclosure” of co-defendant statements to the defense, “[n]or does any other specific discovery rule” so require).   The trial date that has been set in this case – May 27, 2008 – is three months away.  As of now, it is unclear which and how many of the remaining defendants will proceed to trial.  To that effect, the Government is unsure which, if any, co-defendant statements it will seek to introduce at trial.[7]  Once a trial date has been set, the Government will disclose to defendants within a reasonable time in advance of trial any co-defendant statements it will seek to introduce, so that the Court may resolve any <u>Bruton</u> issues that arise sufficiently in advance of trial.  The Government also notes that at this point, to its knowledge, there are no foreseeable <u>Bruton</u> problems that will arise at trial.

---

[7] It should be noted that the statements of defendant Cedeno are set forth in Cedeno’s motion papers.  <u>See</u> Calhoun Aff., Ex. B at 3.

### B.  *Brady* Material

Defendants each request that the Government disclose additional exculpatory material pursuant to Brady v. Maryland, 373 U.S. at 87.  See Angel Diaz Notice of Mot. at 2, Mem. of Law at 5-6; Victor Diaz Notice of Mot. at 2, Mem. of Law at 4; Cedeno Notice of Mot. at 1, Mem. of Law at 8-9.  Specifically, Angel Diaz and Victor Diaz request that the Government be directed to review certain interview notes and reports in order to determine whether additional Brady material may exist.  See Angel Diaz Mem. of Law at 6; Victor Diaz Mem. of Law at 4.  Cedeno requests that Government supplement its Brady disclosure by providing, inter alia, the names of the victims in this case and information related to those victims' statements.  See Cedeno Mem. of Law at 8-9.  These motions should be denied.

Pursuant to the Due Process Clause of the United States Constitution, the Government has a duty to disclose favorable evidence to the accused where such evidence is "material" either to the accused's guilt or punishment.  See Brady, 373 U.S. at 87.  Favorable evidence includes evidence that tends to exculpate the accused, see id., as well as evidence that is useful to impeach the credibility of a government witness.  See Giglio v. United States, 405 U.S. 150, 153-54 (1972).  As the Court of Appeals has explained, Brady and Giglio material must be provided by the Government "in time for its effective use at trial."  In re

United States (United States v. Coppa), 267 F.3d 132, 146 (2d
Cir. 2001); see also id. at 142 ("the prosecutor must disclose .
. . exculpatory and impeachment information no later than the
point at which a reasonable probability will exist that the
outcome would have been different if an earlier disclosure had
been made").

          As set forth above, and as defendants acknowledge, the
Government disclosed material pursuant to its obligations under
Brady v. Maryland in its October 4, 2007 letters to Angel Diaz
and Victor Diaz, and in its December 11, 2007 letter to Jorge
Cedeno.  To date, the Government has disclosed everything of
which it is aware that is arguably Brady material.  The
Government is mindful of its continuing obligation to disclose
Brady material, and will produce any additional such material as
soon as the Government learns of its existence.

          Because the Government has made a good-faith
representation to the Court and defense counsel that it
recognizes and has complied with its disclosure obligations under
Brady, defendants Angel Diaz's and Victor Diaz's requests that
the Court order the Government to review its files and make
additional Brady disclosures should be denied.  See, e.g., United
States v. Gallo, No. 98 Cr. 338 (JGK), 1999 WL 9848, at *8
(S.D.N.Y. Jan. 11, 1999) (denying defendant's motion to compel
production of Brady material based on Government's

18

representations that "it is aware of its obligations under <u>Brady</u>
. . . and will produce any <u>Brady</u> material to the defense well
before trial"); <u>United States v. Yu</u>, No. 97 CR 102 (SJ), 1998 WL
57079, at *4 (E.D.N.Y. Feb. 5, 1998) (denying defense request
that Government provide early disclosure of <u>Brady</u> material
because Government "acknowledged its continuing obligation to
provide exculpatory material upon its discovery" and assured that
it would comply with that obligation); <u>United States v. Perez</u>,
940 F. Supp. 540, 553 (S.D.N.Y. 1996) (same).

Defendant Cedeno's request for additional information
including the names of the victims in the case should also be
denied.  As noted, the Government has already fulfilled its <u>Brady</u>
obligations by notifying defendants of potentially exculpatory
information.  Any further disclosure would require revealing the
identities of the victims in this case, who are Government
witnesses.  As the Second Circuit has explained, "Federal Rule
Criminal Procedure 16 does not require the Government to furnish
the names and addresses of its witnesses."  <u>United States v.</u>
<u>Bejasa</u>, 904 F.2d 137, 139 (2d Cir. 1990).  Nor does any other
rule or statute obligate the Government to disclose the identity
of its prospective witnesses.  See <u>United States v. Alessi</u>, 638
F.2d 466, 481 (2d Cir. 1980) ("[T]he prosecution [is] under no
obligation to give [the defendant] advance warning of the

witnesses who would testify against him" (citing <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977))).

Furthermore, disclosure of such identifying information far in advance of trial would expose the victims in this case to serious danger.  If the Court desires, the Government will provide the Court <u>in camera</u> with more details on why the Government believes the victims in this case would be endangered by premature disclosure of their identities to defendants.  <u>See, e.g.</u>, <u>United States v. Goldman</u>, 439 F. Supp. 337, 350-51 (S.D.N.Y. 1977) (declining to order Government to provide identity of witnesses, because "[o]rdinarily, <u>Brady</u> material consists of documents or statements already <u>in esse</u> and therefore not subject to the danger of alteration.  A witness, on the other hand, might be subject to bribery, intimidation, or other foul play; the integrity of the witness testimony cannot be guaranteed.").

### C.  *Giglio* and Jencks Act Material

Defendants Angel Diaz and Victor Diaz ask that the Government be directed to disclose <u>Giglio</u> and Jencks Act material in the form of witness statements "at least thirty (30) days prior to jury selection."  Angel Diaz Mem. of Law at 6; <u>see also</u> Angel Diaz Notice of Mot. at 2; Victor Diaz Notice of Mot. at 2, Victor Diaz Mem. of Law at 4-5.  Angel Diaz and Victor Diaz also seek advanced disclosure of evidence "bearing on the

20

credibility of any potential witness at trial," including but not limited to such potential witnesses' criminal records, probation files, arrest records, information concerning pending criminal investigations, and written or oral promises of consideration or benefits, as well as law enforcement files or reports containing impeachment material regarding any potential witnesses. Angel Diaz Mem. of Law at 3; see also Angel Diaz Notice of Mot. at 2-3; Victor Diaz Notice of Mot. at 2-3, Victor Diaz Mem. of Law at 1-2. These motions should be denied.

There is no basis for such early disclosure. As a threshold matter, the Government has not yet identified which witnesses it intends to call at trial. That determination will depend upon a number of considerations, including which defendants proceed to trial. In any event, the law is clear that the Government is under no obligation under the Jencks Act, 18 U.S.C. § 3500 et seq., to produce prior statements of its witnesses until after each has testified on direct examination. The Jencks Act provides in pertinent part:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subp[o]ena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500.

21

Courts in this Circuit have consistently held that the district court lacks the power to mandate early production of Jencks material.  See, e.g., United States ex rel. Lucas v. Regan, 503 F.2d 1, 3 n.1 (2d Cir. 1974); In re United States, 834 F.2d 283, 287 (2d Cir. 1987); United States v. Ortiz-Montoya, No. 93 Cr. 0050 (RWS), 1995 WL 37841, at *1 (S.D.N.Y. Jan. 31, 1995); United States v. McGuinness, 764 F. Supp. 888, 896 (S.D.N.Y. 1991).

Similarly, courts in this Circuit have repeatedly refused to compel disclosure of impeachment or Giglio material (which encompasses much of the defendant's requests) well in advance of trial.  In United States v. Coppa, the Second Circuit held that the Government is not required to produce Giglio material until it produces "3500 material" pursuant to the Jencks Act, so long as the Government provides the Giglio material in time for its effective use at trial.  267 F.3d at 145-46; see also United States v. Nixon, 418 U.S. 683, 701 (1974) ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); United States v. Greyling, 00 Cr. 631 (RCC), 2002 WL 424655, at *2 (S.D.N.Y. Mar. 18, 2002) (production of Giglio material by the Wednesday before the week in which a witness will testify is appropriate); Gallo, 1999 WL 9848, at *8 (denying defendants' motions to require the early production of

Giglio and 3500 material based on Government's representations
that it would provide the information sufficiently in advance of
each witness's testimony to allow adequate time to prepare for
cross-examination); United States v. Mejia, No. 98 Cr. 4, 1998
WL 456257, at *1 (S.D.N.Y. Aug. 5, 1998) (denying defendant's
motion to compel all impeachment material under Giglio based on
the Government's representations that it would make such
information available at the time that it provides 3500
material).

       However, in order to avoid any adjournment or delay in
the trial which might conceivably occur if 3500 and Giglio
material were not produced until after the Government's
witnesses have testified, the Government will adhere to its
customary practice of producing impeachment material at the same
time as Jencks Act material, i.e. the day before the
corresponding witness will testify, or, if additional time is
reasonably required to review such material, sufficiently in
advance of the witness's testimony so as to avoid any delay at
trial.  This practice will allow defense counsel adequate time
to prepare for cross-examination of Government witnesses as they
come up at trial.

       D.    **Rule 404(b) Material**

       Defendants Angel Diaz, Victor Diaz, and Jorge Cedeno
each request that the Court order the Government to supplement

its disclosure of 404(b) evidence.  See Angel Diaz Notice of
Mot. at 1, Mem. of Law at 7; Victor Diaz Notice of Mot. at 1,
Mem. of Law at 5; Jorge Cedeno Notice of Mot. at 1, Mem. of Law
at 9-10.  Specifically, Angel Diaz and Victor Diaz request that
the Government disclose any such evidence it intends to offer at
least 30 days prior to jury selection, see Angel Diaz Mem. of
Law at 7; Victor Diaz Mem. of Law at 5, and Jorge Cedeno asks
the Court to set a schedule for the disclosure of Rule 404(b)
evidence, see Cedeno Mem. of Law at 10.

      The Government is cognizant of the provisions for
pretrial notice in Rule 404(b), and will provide such Rule
404(b) notice prior to trial.  Indeed, in its October 4, 2007
discovery letter to Victor Diaz and its December 11, 2007 letter
to Jorge Cedeno, the Government informed Victor Diaz and Cedeno
that it may introduce evidence pursuant to Rule 404(b) regarding
those defendants' participation in the thefts of additional
trucks.  This notice was provided well in advance of when the
Government was obligated to do so, and no further notice is
required at this time.

      Rule 404(b) provides no strict time deadline for
notification.  The rule merely requires that the Government
provide "reasonable notice in advance of trial, or during trial
if the court excuses pretrial notice on good cause shown" of its
intent to use evidence of other crimes, wrongs, or bad acts.

24

Fed. R. Evid. 404(b) (emphasis added).  Ten business days'
notice has routinely been held to be adequate under the notice
provision of Rule 404(b).  See <u>United States v. Valenti</u>, 60 F.3d
941, 945 (2d Cir. 1995) (in embezzlement case, four days' notice
of evidence of prior wire transfers showing defendant's
knowledge sufficient notice of other acts evidence under Rule
404(b)); <u>United States v. Triana-Mateus</u>, 2002 WL 562649, at *6
(directing Government to provide 404(b) notice two weeks before
trial).

In this case, on February 15, 2008, the Court issued a
scheduling order directing the Government to make disclosure
pursuant to Rule 404(b) on April 15, 2008, and directing
defendants to respond to that submission by April 29, 2008.
Assuming there are no adjournments of the scheduled trial date
or postponements of this briefing schedule, the Government will
abide by that schedule.

### E.    Polygraph Reports

Victor Diaz requests, pursuant to Federal Rule of
Criminal Procedure 16(a)(1)(F)(iii), an order directing the
Government to disclose polygraph reports, relevant questions,
and control questions.  See Victor Diaz. Notice of Mot. at 2.
This motion should be denied.

Courts in this Circuit have declined to order
Government production of polygraph reports pursuant to Rule 16,

as they are not scientific tests falling under the scope of Rule
16(a)(1)(F).  See United States v. Feola, 651 F. Supp. 1068,
1146-47 (S.D.N.Y. 1987) (CLB) (denying defendant's discovery
motion for polygraph reports because the Court did not consider
a polygraph report to be "a 'scientific test or experiment'
within the contemplation of [predecessor rule to Rule
16(a)(1)(F)] in that its reliability has not been sufficiently
established in the scientific community, and which is not
otherwise discoverable under Rule 16."); see also United States
v. Amor, No. 92 Cr. 223 (NPM), 1992 U.S. Dist. LEXIS 16146, at
*17-19 (N.D.N.Y. Oct. 16, 1992); United States v. Marquez, No.
91 Cr. 451 (SWK), 1992 U.S. Dist. LEXIS 5247, at *30-31
(S.D.N.Y. Apr. 22, 1992).  Victor Diaz's request for such
disclosure should be denied.  To the extent defendants are
entitled to any information regarding polygraph examinations,
the Government will provide such information when it provides
Jencks Act material.

## III. DEFENDANTS' MOTIONS TO SUPPRESS IDENTIFICATIONS SHOULD BE DENIED WITHOUT A HEARING

Angel Diaz and Victor Diaz each move to suppress any
in-court identifications at trial that are based on what they
term to be an "impermissively suggestive" photographic
identification procedure conducted in this case using a
photographic array, or in the alternative, for a hearing to
determine the circumstances under which the identifications were

made.  <u>See</u> Angel Diaz Notice of Mot. at 2, Fufidio Aff. ¶ 6,
Mem. of Law at 7-8; Victor Diaz Notice of Mot. at 2, Burke Aff.
¶ 6, Mem. of Law at 5-6.  Jorge Cedeno moves to suppress
identification testimony and evidence derived from a
photographic array containing his image.  <u>See</u> Cedeno Not. of
Mot. at 1; Mem. of Law at 5-6.  These motions should be denied
without a hearing.

### A.  <u>Applicable Law</u>

When assessing challenges to identification
procedures, courts follow a two-step process.  First, the
reviewing court must determine whether the pretrial
identification procedure was "unduly suggestive of the suspect's
guilt."  <u>United States v. Maldonado-Rivera</u>, 922 F.2d 934, 973
(2d Cir. 1990); <u>see also</u> <u>Jarrett v. Headley</u>, 802 F.2d 34, 40-41
(2d Cir. 1986) (holding that an identification procedure
violates due process if it "'is so impermissibly suggestive as
to give rise to a very substantial likelihood of irreparable
misidentification'") (quoting <u>Simmons v. United States</u>, 390 U.S.
377, 384 (1969)).  In a case such as this one, improper
suggestion can result from either the composition of a photo
array and/or from the manner in which law enforcement
authorities conducted an identification procedure.  <u>See,</u>
<u>e.g.,</u> <u>United States v. Padilla</u>, No. S1 94 Cr. 313 (CSH), 1994
U.S. Dist. LEXIS 17395, at *20 (Dec. 5, 1994).  If the Court

27

finds that the pretrial identification procedure was not suggestive, no further inquiry is required.  Even if the pretrial procedure is deemed suggestive, the Court still may allow a subsequent in-court identification if it finds the in-court identification to be "independently reliable rather than the product of the earlier suggestive procedures."  <u>Maldonado-Rivera</u>, 922 F.2d at 973; <u>see also</u> <u>United States v. Thai</u>, 29 F.3d 785, 808 (2d Cir. 1994) (collecting cases).

    In determining whether a photo array is impermissibly suggestive, courts assess "whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to 'suggest to an identifying witness that [that person] was more likely to be the culprit.'" <u>Jarrett</u>, 802 F.2d at 41 (quoting <u>United States v. Archibald</u>, 734 F.2d 938, 940 (2d Cir. 1984) (alteration in original)).  Courts in this Circuit have held that a photo array containing six or more photographs is sufficiently large so as not to be unduly suggestive.  <u>See, e.g.</u>, <u>Thai</u>, 29 F.3d at 808 (collecting cases). Courts have found photo arrays suggestive in circumstances where, for example, the defendant is the only one in the array with the skin color described by the witness, <u>see</u> <u>United States v. Fernandez</u>, 456 F.2d 638, 641-43 (2d Cir. 1972), or where the defendant is the only one with the specific hairstyle described by the witness, <u>see</u> <u>United States v. Eltayib</u>, 88 F.3d 157, 166-

28

67 (2d Cir. 1996).  However, "[t]he due process clause does not require law enforcement officers to scour about for a selection of photographs so similar in their subject matter and composition as to make subconscious influences on witnesses an objective impossibility." United States v. Bubar, 567 F.2d 192, 199 (2d Cir. 1977); see also Thai, 29 F.3d at 808 (finding array was not improperly suggestive where it contained photographs of individuals all of the same sex, race, hair color, and approximate age as defendant, even though there were other minor differences).

When requesting an evidentiary hearing challenging the suggestiveness of an identification procedure, defendants must meet the burden of stating "'sufficient facts which, if proven, would [] require [] the granting of the relief requested.'" United States v. Richardson, 837 F. Supp. 570, 573 (S.D.N.Y. 1993) (quoting United States v. Culotta, 413 F.2d 1343 (2d Cir. 1969)).  No evidentiary hearing is required where defendants "fail to make a threshold showing of suggestiveness." United States v. Ruggiero, 824 F. Supp. 379, 396 (S.D.N.Y. 1993) (denying defendants' request for pretrial hearing and finding that defendants could challenge identification procedure instead through the "time-honored process of cross-examination"); see also United States v. McCallister, No. 00 Cr. 482 (LMM), 2000 U.S. Dist. LEXIS 16955, at *2 (S.D.N.Y. Nov. 22, 2000) ("In the

29

absence of a sufficient pretrial showing of impropriety, which has not been made, exploration of the circumstances surrounding the identification procedures may properly be left to cross-examination at trial.") (internal quotation marks omitted); United States v. Song, No. 95 Cr. 129 (KMW), 1995 U.S. Dist. LEXIS 18399, at *17-18 (S.D.N.Y. Dec. 13, 1995) (denying defendants' request for pretrial hearing where "[d]efendants have made no showing that the procedures used in showing the array to any witnesses were unduly suggestive, and any questions concerning the reliability of witnesses' identifications can properly be raised on cross-examination"); Padilla, 1994 U.S. Dist. LEXIS 17395, at *28 (denying pretrial hearing to explore circumstances of identification procedures because defendants' "speculations [that such procedures may have been suggestive] were insufficient to warrant a pre-trial hearing").

> **B.** **Angel Diaz's and Victor Diaz's Motions for Suppression of Identification Evidence, or Alternatively for a Hearing, Should Be Denied**

Neither Angel Diaz nor Victor Diaz challenge the substance of the photo arrays that were used in this case, nor does either make any factual showing to support their claim that the identification procedures in this case were impermissibly suggestive.  They each simply state that a photo array was used and request suppression based on that fact, or in the alternative, request a hearing to explore the circumstances of

30

the identification procedure.  See Angel Diaz Notice of Mot. at
2, Fufidio Aff. ¶ 6, Mem. of Law at 7-8; Victor Diaz Notice of
Mot. at 2, Burke Aff. ¶ 6, Mem. of Law at 5-6.  Under such
circumstances, defendants' requests should be denied.

     As set forth above, defendants are required to make a
threshold factual showing of impropriety or suggestiveness in
order to merit an evidentiary hearing.  See, e.g., Ruggiero, 824
F. Supp. at 396.  The mere use of a photo array is not
inherently suggestive, and such use will not prevent admission
of the pre-trial identification or an in-court identification by
the witness.  See Simmons v. United States, 390 U.S. at 384;
Richardson, 837 F. Supp. at 573.  When a threshold showing of
suggestiveness is not made, defendants should not be granted an
evidentiary hearing simply in order that they may explore the
circumstances of the identification procedures.  Such
exploration may be conducted through cross-examination at trial.
See, e.g., McCallister, 2000 U.S. Dist. LEXIS 16955, at *2;
Song, 1995 U.S. Dist. LEXIS 18399, at *17-18; United States v.
Lee, 862 F. Supp. 1129, 1131, 1133 (S.D.N.Y. 1994) (denying
defendants' request for pretrial hearing "to explore the
possibility" that the identification procedures were suggestive
"[w]here, as here, defendants' motions were based entirely on
speculation whether the procedures used in identifications from
photo arrays might have been suggestive, and defendants did not

31

challenge the arrays themselves"); <u>Ruggiero</u>, 824 F. Supp. at
396.

Moreover, courts have denied such requests for
hearings in cases involving violence, such as the instant case,
because such pretrial hearings would prematurely identify
government witnesses and potentially subject those witnesses and
their families to danger.  <u>See</u> <u>United States v. Cherry</u>, No. S1
94 Cr. 313 (CSH), 1995 U.S. Dist. LEXIS 1750, at *6 (S.D.N.Y.
Feb. 15, 1995) (denying request for pretrial hearing where "the
government has a specific, legitimate concern for the safety of
lay witnesses," and because "[g]enerally, the government is not
required to identify its witness or disclose their statements
prior to trial; and that rule has frequently been applied to
defense requests for information concerning identification
procedures"); <u>see also</u> <u>United States v. Lee</u>, 862 F. Supp. at
1133.

**C.    <u>Cedeno's Motion to Suppress Identification
Evidence Affected by or Derived from Photo Array
Should Be Denied</u>**

Cedeno claims that the photo array in this case was
suggestive because his photograph is the only photograph in the
array with a white background.  <u>See</u> Cedeno Not. of Mot. at 1;
Mem. of Law at 5-6.  A color copy of the photo array in question
is attached to this Memorandum as Ex. A; Cedeno's photograph
appears in box 3.  Each of the six photographs in the array

depicts a frontal, close-up view of an African-American male with medium skin-tone, a moustache and some facial hair, dark-colored eyes, and closely cropped hair. The individuals all appear to be the same approximate age. The individuals are wearing shirts of varied colors. The photographs have different colored backgrounds: the backgrounds of the photographs in boxes 1, 3, 4, and 5 are varying shades of grey. The photograph in box 6 has a blue background. The photograph of Cedeno has a white background.[8]

The photo array in question was not suggestive under the governing standards. Where, as here, the photos in the array are substantially similar to one another in almost every respect, minor differences among the photographs do not lead to an inference of impermissible suggestiveness. See, e.g., United States v. Bautista, 23 F.3d 726, 731 (2d Cir. 1994) (holding that array was not suggestive where defendant's photo was "brighter" and "more close-up" than the others, where each of the photos were in color, taken from the same angle, and depicted men of the roughly the same age and coloring, all of whom had moustaches); see also United States v. Fletcher, 121 F.3d 187, 194-95 (5th Cir. 1997) (finding array non-suggestive even where defendant was only person wearing suit and tie in array, when witness had identified defendant as wearing suit and

---

[8] It should be noted that the background is greyish-white, not stark white.

tie during crime because in all other respects, photos in array were similar); <u>Archibald</u>, 734 F.2d at 940 (finding no suggestiveness where only defendant's photo bore an identification plate showing he was arrested in Manhattan); <u>United States v. Marchand</u>, 564 F.2d 983, 995 (2d Cir. 1977) (holding that differences in sizes of photos in array and fact that defendant's photo was "somewhat marred by glare" did not make array unnecessarily suggestive); <u>Bubar</u>, 567 F.2d at 198-99 (holding that array was not suggestive when defendant argued that the "focus and contrasts were sharper in his photograph," and a "narrow strip of light not in the other photographs ran across the field above his head"); <u>United States v. Lincoln</u>, 494 F.2d 833, 839-40 (9th Cir. 1974) (holding array not suggestive even where defendant's photo was the only one of nine that was not in color); <u>United States v. Harrison</u>, 460 F.2d 270, 271 (2d Cir. 1972) (holding that array was not impermissibly suggestive even though defendant's photo was only one in array that was single, front-view photo and others were double, front-and-side view photos); <u>see generally</u> <u>United States v. McGee</u>, No. 99 Cr. 150E(F), 2000 U.S. Dist. LEXIS 15066, at *35 (W.D.N.Y. May 26, 2000) ("If other physical characteristics of the individuals in a photo array are sufficiently similar, a single, stark, difference in appearance may not give rise to undue suggestiveness.").

Here, the difference among the photographs in the array is truly minor. While Cedeno's photo was the only photo with a white background, the photo in Box 6 is the only photo with a blue background. The individual in Box 4 is the only individual wearing a red shirt. The individual in Box 5 is the only individual with an earring. The individual in Box 2 is the only individual wearing a collared shirt. The individual in Box 1 is the only individual whose head is tilted to the left. A witness might be drawn to any of those individuals because of a minor difference in his photograph from the others just as easily as he or she might be drawn to Cedeno because of the different color of the background in his photograph. As Cedeno himself admits, the facial characteristics of the individuals in the array are similar, and do not pose any inference of suggestiveness. See Cedeno Mem. of Law at 5. There are a number of minor differences among the photographs in the array, but none of those differences lead to a conclusion that the array was impermissibly suggestive.

Should the Court determine that the array was suggestive, the Government would request a separate and subsequent inquiry into whether, despite that conclusion, any subsequent in-court identification of the defendant by witnesses who viewed the array would be nevertheless admissible, pursuant to the five-factor test articulated in Neil v. Biggers, 409 U.S.

35

188, 199-200 (1972) ((1) witness's opportunity to view defendant
at time of crime; (2) witness's degree of attention at time of
crime; (3) accuracy of witness's description of defendant prior
to identification; (4) witness's level of certainty when
identifying defendant at confrontation; and (5) length of time
elapsed between crime and confrontation).

## IV.  ANGEL DIAZ'S AND VICTOR DIAZ'S MOTIONS FOR SEVERANCE SHOULD BE DENIED

        Angel Diaz and Victor Diaz each move for an order
severing his trial from the other defendants in the case.  <u>See</u>
Angel Diaz Notice of Mot. at 2, Fufidio Aff. at 2, Mem. of Law
at 4-5; Victor Diaz Notice of Mot. at 2, Burke Aff. at 1-2, Mem.
of Law at 2-3.  These motions are without merit and should
accordingly be denied.

### A.    Applicable Law

        The Supreme Court has made plain that there is a
"preference in the federal system for joint trials of defendants
who are indicted together."  <u>Zafiro v. United States</u>, 506 U.S.
534, 537 (1993); <u>see</u> Fed. R. Crim. P. 8(b).  This preference
reflects a settled precept in criminal law:

> Joint trials "play a vital role in the
> criminal justice system." <u>Richardson v.
> Marsh</u>, 481 U.S. 200, 209 (1987).  They
> promote efficiency and "serve the interests
> of justice by avoiding the scandal and
> inequity of inconsistent verdicts."  <u>Id</u>. at
> 210.

<u>Zafiro</u>, 506 U.S. at 537.  Joint trials of defendants indicted

together also serve to "conserve prosecutorial resources, diminish inconvenience to witnesses, and avoid delays in the administration of criminal justice." <u>Richardson</u>, 481 U.S. at 217 (Stevens, J., dissenting). The <u>Richardson</u> Court explained:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability — advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

<u>Id</u>. at 210 (footnote omitted). Thus, even where joint trials invite some prejudice to defendants, "[t]he risks of prejudice attendant in a joint trial are presumptively outweighed by the conservation of time, money, and scarce judicial resources that a joint trial permits." <u>United States v. Jimenez</u>, 824 F. Supp. 351, 366 (S.D.N.Y. 1993).

Rule 14 of the Federal Rules of Criminal Procedure permits severance in certain limited circumstances.[9]  However,

---

[9]    Rule 14 provides in pertinent part:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice

the presumption in favor of joint trials is so strong that the Second Circuit has stated that "[t]he principles that guide the district court's consideration of a motion for severance usually counsel denial." United States v. Rosa, 11 F.3d 315, 341 (2d Cir. 1993). A defendant seeking severance therefore shoulders the "extremely difficult burden" of showing that he would be so prejudiced by joinder that he would be denied a fair trial. United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir. 1989) (internal quotation marks omitted). It is not enough for a defendant to show that he "may have a better chance of acquittal in [a] separate trial[]." Zafiro, 506 U.S. at 540. Instead, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539; see also United States v. Panza, 750 F.2d 1141, 1149 (2d Cir. 1984) (explaining that prejudice must be "sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials").

        Such instances include, for example, when evidence of wrongdoing was admissible only against one of the defendants; where defendants at a joint trial have markedly different levels
_____

        a defendant or the government, the court may
        order separate trials of counts, sever the
        defendants' trials, or provide any other
        relief that justice requires.
Fed. R. Crim. P. 14(a).

of culpability; or where a co-defendant's statement technically admissible only against a co-defendant was also probative of the defendant's guilt.  Zafiro, 506 U.S. at 539.  Even in those rare instances where a defendant establishes a "high" risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Id. at 539 (citing Richardson, 481 U.S. at 211); see also United States v. Freyer, 333 F.3d 110, 114 (2d Cir. 2003).

    The presumption in favor of joint trials "is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme." United States v. Salameh, 152 F.3d 88, 115 (2d Cir. 1998).  "[T]he cases are legion that there is a strong public interest in joint trials where, as here, the defendants are both charged in the same conspiracy." United States v. Pirro, 76 F. Supp. 2d 478, 483 (S.D.N.Y. 1999); see also Freyer, 333 F.3d at 114 (holding that joinder of defendants is "proper when the alleged acts are 'unified by some substantial identity of facts or participants and a common plan.'" (quoting United States v. Attensio, 870 F.2d 809, 815 (2d Cir. 1989))); United States v. Bin Laden, 109 F. Supp. 2d 211, 214 (S.D.N.Y. 2000) ("When more than one defendant is accused of participating in the same act or transaction or series of acts or transactions, federal law expresses a strong preference for a single, joint trial of all

39

defendants." (footnote omitted)).

In conspiracy cases, especially, any claim of "prejudicial spillover" does not justify severance because the evidence would be admissible at a separate trial of the moving defendant. As the Second Circuit has recognized:

> the fact that testimony against a codefendant may be harmful is not a ground for severance if that testimony would also be admissible against the moving defendant tried separately. Evidence at the joint trial of alleged coconspirators that, because of the alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudicial.

Rosa, 11 F.3d at 341 (citations omitted). Rather, undue "prejudice" may occur "when proof inadmissible against a defendant becomes a part of his trial solely due to the presence of co-defendants as to whom its admission is proper. This is an unlikely occurrence when all the defendants are charged under the same conspiracy count." Salameh, 152 F.3d at 115 (citation omitted).

### B. <u>Severance Is Not Appropriate in this Case</u>

Angel Diaz and Victor Diaz argue for severance on the ground they will each suffer prejudicial spillover from the fact that neither of them is accused of participating in all of the three robbery/kidnappings alleged in the Superseding Indictment.

Defendants are, however, each implicated in the bulk

of the criminal conduct charged in the eight-count Superseding Indictment, and by no means will suffer prejudicial spillover at a joint trial. Angel Diaz and Victor Diaz are both charged in the kidnapping and armed robbery conspiracies (Counts One and Four of the Superseding Indictment). Angel Diaz is charged with participating in one of the three robbery/kidnappings (Counts One, Two, Four, and Five), and with brandishing a firearm in the course of that robbery/kidnapping (Count Seven). Victor Diaz is charged with participating in two of the three robbery/kidnappings (Counts One, Two, Four, and Five).[10]

Moreover, each defendant is accused of participating in acts that are undoubtedly "'unified by some substantial identity of facts or participants and a common plan.'" <u>See Freyer</u>, 333 F.3d at 114 (quoting <u>Attenasio</u>, 870 F.2d at 815).

---

[10] Victor Diaz's statement that his "alleged involvement in this case is limited to a September 13, 2006 incident involving a truck hijacking," Burke Aff. ¶ 5, Victor Diaz Mem. of Law at 2-3, is blatantly incorrect. As noted above, Victor Diaz is charged with both kidnapping conspiracy and armed robbery conspiracy, and, as set forth in paragraphs 3(a) and 3(c) of Superseding Indictment S4 07 Cr. 387, he is alleged to have participated in two out of the three robbery/kidnappings – those occurring on September 13, 2006 and November 14, 2006. Even though the November 14, 2006 robbery/kidnapping is not charged substantively in the Superseding Indictment, that crime is included in both the robbery and kidnapping conspiracies, and evidence will be presented at trial regarding that crime, and regarding Victor Diaz's participation in it. Indeed, Victor Diaz is equally as involved as his co-defendants Plutarco Angulo-Aguirre, Saile Parra, and Jorge Cedeno, each of whom is also charged with participating in two out of the three robbery/kidnappings (including the November 14, 2006 robbery kidnapping), and none of whom have moved for severance in this case.

41

The evidence will show that each robbery/kidnapping was committed in a strikingly similar fashion, and each such robbery/kidnapping involved many of the same participants. Additionally, evidence of each robbery/kidnapping (including the substantive robbery/kidnappings with which Angel Diaz and Victor Diaz are not charged) constitutes evidence of the kidnapping and armed robbery conspiracies, in which Angel Diaz and Victor Diaz <u>are</u> charged. As such, evidence of all three robbery/kidnappings will be admissible to prove the conspiracies charged in the Superseding Indictment, regardless of whether defendants' cases are severed. <u>See</u> <u>United States v. Rosa</u>, 11 F.3d at 341 ("Evidence at the joint trial of alleged coconspirators that, because of the alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudicial."); <u>United States v. Neresian</u>, 824 F.2d 1294, 1304 (2d Cir. 1987) (holding that where there is sufficient evidence to show the existence of a conspiracy, the Government is "entitled to show the entire range of evidence of the conspiracy against each [defendant]." ).[11]

---

[11] It is true that the testimony of some witnesses will serve to link one, but not all, defendants to the conspiracies charged in the Superseding Indictment. Much of that evidence, however, would be admissible at a separate trial of Angel Diaz or Victor Diaz to prove the existence of the charged conspiracies. In any event, "the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance." <u>United States v. Carson</u>, 702 F.2d 351, 367 (2d Cir.

If it were later determined that any actual prejudicial spillover might arise, that could be cured by instructions to the jury.  Zafiro, 506 U.S. at 540; see also Freyer, 333 F.3d at 114; United States v. Chang An-Lo, 851 F.2d 547, 556 (2d Cir. 1988) (denying severance where "the evidence with respect to each of the defendants was adequately straightforward that the jury could consider it without any significant spillover effect").  This case does not involve complicated facts; the evidence will be straightforward enough for the jury to consider it without any significant spillover effect.

Finally, even assuming that a particular defendant is somehow prejudiced by joinder with a codefendant, the standard under Federal Rule of Criminal Procedure 14 is not whether there is any prejudice, but whether that prejudice "is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials."  United States v. Panza, 750 F.2d at 1149.  The presumption in favor of joint trials thus "conserves judicial resources, alleviates the burden on citizens serving as jurors, and avoids the necessity of having witnesses reiterate testimony in a series of trials."  United States v. Lyles, 593 F.2d 182, 191 (2d Cir. 1979) (internal quotation

---

1983).  This is particularly the case where the court instructs the jury to consider the evidence against each defendant separately and issues limiting instructions as appropriate.  See id.

marks omitted); <u>United States v. Corr</u>, 543 F.2d 1042, 1052 (2d Cir. 1976).

Because most, if not all, of the evidence that would be admitted at a joint trial would also be admissible in a separate trial of either Angel Diaz or Victor Diaz, separate trials would result in an enormous duplication of effort, wasting judicial resources. Moreover, severing either defendant's case would not save any substantial time in either those defendants' cases or the other defendants' trial.

Thus, severing the defendants will waste judicial resources, increase the burden on citizens serving as jurors, and necessitate having witnesses reiterate the same testimony in two lengthy trials. <u>Cf.</u> <u>Lyles</u>, 593 F.2d 182, 191 (2d Cir. 1979) (citing these three issues as the reason for the presumption against severance). Severance in this case would run afoul of the warning of the Supreme Court in <u>Richardson</u>, 481 U.S. at 210, by impairing the efficiency of the criminal justice system in requiring prosecutors to "present[] the same evidence again and again[,] . . . randomly favoring the last-tried defendants." Accordingly, Angel Diaz's and Victor Diaz's respective motions for severance should be denied.

## V.    **JORGE CEDENO'S STATEMENTS ARE ADMISSIBLE FOR IMPEACHMENT PURPOSES**

Cedeno seeks an order suppressing certain statements he made on the day of his arrest in the instant case.

See Cedeno Notice of Mot. at 1 and Ex. E (Cedeno Aff.), Mem. of Law at 4-5. The Government concedes that Cedeno had not received warnings pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), when he made the statements in question, and as, such, those statements are not admissible in the Government's case-in-chief at trial. Id. at 492. However, "[t]he shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." Harris v. New York, 401 U.S. 222, 226 (1971); accord Oregon v. Haas, 420 U.S. 714, 723-24 (1975). Should Cedeno take the stand in his own defense at trial and make assertions that are contradictory to the statements he made to the authorities on the day of his arrest, the Government will seek to confront Cedeno with those statements on cross-examination. See, e.g., United States v. Griffith, 385 F.3d 124, 126 (2d Cir. 2004); Varela v. Marshall, 520 F. Supp. 2d 471, 477 (S.D.N.Y. 2007).

45

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny defendants' motions, with the exception of defendant Cedeno's motion to suppress his statements.  As to that motion, the Government contends that although Cedeno's statements are not admissible in its case-in-chief, they are admissible on cross examination for impeachment purposes, should Cedeno take the witness stand in his own defense.

The Government also reiterates its prior request that defendant Angulo-Aguirre's pretrial motions should be denied in their entirety.  As stated, the Government consents to an evidentiary hearing on Rodriguez's motion to suppress evidence.


Dated:    New York, New York
          February 26, 2008


                         Respectfully submitted,

                         MICHAEL J. GARCIA
                         United States Attorney for the
                         Southern District of New York


                         By:   /s/_____
                         Nola B. Heller
                         Assistant United States Attorney
                         (212) 637-2631

## <u>AFFIRMATION OF SERVICE</u>

NOLA B. HELLER, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

That I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York.  That, on February 26, 2008, I caused copies of the Government's Second Memorandum of Law in Opposition to Defendants' Pretrial Motions to be delivered by ECF and Federal Express to:

> George E. Fufidio, Esq.
> Mancuso, Rubin & Fufidio
> One North Broadway, Suite 1502
> White Plains, NY 10601
>
> Michael K. Burke, Esq.
> Burke, Miele & Golden, LLP
> 100 Washington Avenue
> Suffern, NY 10901,

and

> Clinton W. Calhoun, III, Esq.
> Bricetti, Calhoun & Lawrence
> 81 Main Street, Suite 450
> White Plains, NY 10601

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:    New York, New York
          February 26, 2008

_____/s/_____
Nola B. Heller

47