```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x
                                 :
UNITED STATES OF AMERICA,        :
                                 :
        - v. -                   :
                                 :
PLUTARCO ANGULO-AGUIRRE,         :
    a/k/a "Matatan,"             :
    a/k/a "Platano,"             :        S4 07 Cr. 387 (CM)
RAFAEL RODRIGUEZ,                :
    a/k/a "Dance,"               :
ANGEL DIAZ,                      :
    a/k/a "Pete,"                :
VICTOR DIAZ,                     :
    a/k/a "Gago,"                :
SAILE PARRA, and                 :
JORGE CEDENO,                    :
                                 :
            Defendants.          :
                                 :
- - - - - - - - - - - - - - - - x
```

# THIRD MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO DEFENDANTS' PRETRIAL MOTIONS

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Nola B. Heller
Assistant United States Attorney
    -Of Counsel-

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Evidence Presented at the Hearing . . . . . . . . . . 2

    B.   The Court's Ruling . . . . . . . . . . . . . . . . . .5

ARGUMENT

    DEFENDANT RODRIGUEZ'S MOTION TO SUPPRESS HIS
    BULLETPROOF VEST SHOULD BE DENIED
    WITHOUT A HEARING . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**PRELIMINARY STATEMENT**

The United States of America respectfully submits this third memorandum of law in opposition to the supplemental pretrial motion of defendant Rafael Rodriguez, submitted on April 8, 2008. Rodriguez's motion is without merit and, for the reasons set forth below, should be denied without a hearing, based on the findings and conclusions the Court has already made.

**BACKGROUND**

Rodriguez is charged in all eight counts of Indictment No. S4 07 Cr. 387 (CM). Specifically, Rodriguez is charged in one count of conspiracy to commit kidnapping, in violation of Title 18, United States Code, Section 1201(c); two counts of kidnapping, in violation of Title 18, United States Code, Section 1201(a); one count of conspiracy to commit armed robbery, in violation of Title 18, United States Code, Section 1951(a); two counts of armed robbery, in violation of Title 18, United States Code, Section 1951(a); and two counts of brandishing a firearm during and in relation to a crime of violence, in violation of Title 18, United States Code, Section 924(c).

On April 2, 2008, the Court held an evidentiary hearing in order to consider Rodriguez's motion to suppress certain evidence found in the trunk of a car in which he was a passenger on or about January 3, 2007, specifically, a black knapsack

containing two guns loaded with hollow point bullets, plastic flex ties, a face mask, and a pair of gloves.

    A.   <u>Evidence Presented at the Hearing</u>

Testimony given by Orangetown Detective Daniel Costello at the April 2, 2008 suppression hearing showed that Detective Costello was investigating a truck hijacking, armed robbery, and kidnapping that occurred on September 13, 2006 in Blauvelt, New York. During the course of the investigation, in December 2006, detectives located a witness ("CW-1") who was involved in planning the crime, and who had served as a liaison between an employee at the warehouse that was robbed and the group that committed the hijacking. (Tr.[1] 15.) CW-1 was not present for the actual hijacking, but subsequently heard from the perpetrators that during the crime, one of the victims had been struck with a gun, and that a large amount of perfume products had been stolen from a tractor trailer. (Tr. 16.) CW-1 provided detectives with the names, nicknames, cell phone numbers, and physical descriptions of his co-conspirators, as well as the cars they drove and the location of a residence where two of them lived. (<u>Id.</u>) Specifically, <u>inter alia</u>, CW-1 told detectives that "Jorge" drove a silver BMW, "Geraldo" drove a black BMW, and "Dance" drove a black BMW. (Tr. 17.) Through investigation,

---

[1] References to "Tr." are to the transcript of the April 2, 2008 evidentiary hearing in this matter.

detectives were able to determine that the residence CW-1 described was located at 14 East Seventh Street, in Clifton, New Jersey ("the Clifton Residence"). (Tr. 16.)

Detective Costello testified that the first time he and his partner, Detective Robert Goldrick, visited the Clifton Residence in December 2006, they found mail thrown on the floor of the hallway addressed to "German Cuadrado." (Tr. 18.) Because CW-1 had mentioned that one of his co-conspirators was named "Geraldo," or "German," detectives went to a local police department to run a database check on the name "German Cuadrado." (Id.) That check revealed that Cuadrado had been arrested on a vehicle and traffic violation several days prior, and had been bailed out by an individual named Juan Camacho. (Id.) The name "Juan Camacho" was significant to the detectives because they had previously interviewed Camacho at Drom Industries, the location where they believed the hijacked truck had been offloaded. (Id.; Tr. 28.)

On January 3, 2007, Detectives Costello and Goldrick went to the vicinity of the Clifton Residence and noticed a black BMW parked in front of the Residence. (Tr. 18-19.) The detectives then performed a registration check of the black BMW, which revealed that the car was registered to Juan Camacho, the same individual whom they had interviewed at Drom Industries and who had previously bailed out German Cuadrado. (Tr. 19.) The

3

detectives then decided to set up surveillance on the black BMW, and parked across the street from the Clifton Residence. (Id.)

After about an hour, Detective Costello observed a silver BMW with three passengers pull up behind the black BMW "into a parked position in front of" the Clifton Residence. (Tr. 20.) Detective Costello found this relevant because CW-1 had described one of his co-conspirators, Jorge, as the driver of a silver BMW, and because the silver BMW was pulling up behind the black BMW, in front of the Clifton Residence, where detectives believed that two of the suspects in the hijacking resided. (Tr. 22.) The detectives then pulled out of the parking lot they were in and drove toward the location where the silver BMW had parked, stopping in the street. (Tr. 23.)

When the detectives exited their unmarked police car (Tr. 19), Detective Costello testified that the driver, subsequently identified as Jorge Flores, was out of the vehicle with the door shut, standing to the rear of the silver BMW; the passenger, subsequently identified as Rafael Rodriguez, had exited and was walking on the grass toward the Clifton residence; and the female, subsequently identified as Amalfy Pena, was still seated in the back seat. (Tr. 23.)

Detective Costello approached Flores and engaged him in brief conversation, while Detective Goldrick approached Rodriguez. (Tr. 24.) Detective Goldrick then yelled to

4

Detective Costello that Rodriguez was wearing a "vest," which Detective Costello took to mean a bulletproof vest.  (Id.) Detective Goldrick later informed Detective Costello that he learned that Rodriguez was wearing a vest when he approached Rodriguez from behind, touched Rodriguez's back, and felt the vest through Rodriguez's clothing.  (Tr. 25.)  At that point, Detective Costello pushed Flores against the silver BMW, and told Pena to raise her hands and not to move; he then saw Detective Goldrick emerge from behind the silver BMW with Rodriguez in handcuffs.  (Id.)

    The silver BMW was ultimately searched, and inside the trunk was a black knapsack containing flex cuffs, a pair of gloves, a mask, a .44 magnum revolver, and a .357 magnum revolver, both of which were loaded with hollowpoint bullets. (Tr. 26-27.)

    B.   The Court's Ruling

    At the conclusion of the hearing, the Court credited Detective Costello's testimony "in its entirety," (Tr. 55), and denied Rodriguez's suppression motion on two grounds.  First, the Court found that Rodriguez lacked standing to challenge the search of the vehicle, because he had not asserted a possessory interest in the vehicle or its contents, and because no traffic stop had occurred (which would have given Rodriguez standing to challenge the evidence found in the car as fruit of an

5

unconstitutional traffic stop). (Tr. 60-62.) Second, the Court found that even if there had been a stop of the vehicle, "it would have been a perfectly lawful stop," because "[a]t the time that the vehicle was approached by the officers they had a substantial amount of information tending to link that vehicle to the criminal activity that they were investigating." (Tr. 59.) Specifically, the Court found that

> [a]t the time that the vehicle was approached by the officers they had a substantial amount of information tending to link that vehicle to the criminal activity that they were investigating. They had a witness who identified a silver BMW as an automobile being driven by one of the people who carried out the crime and a black BMW as being driven by another individual who carried out the crime. The residence address that they were surveilling turned out to be the house of two individuals who were identified as participants in this crime by the witness, one of whom, Mr. Camacho[2], had been interviewed at the location where the detective believed that a truck had offloaded the stolen merchandise. And that individual had been linked to the BMW that was in front of the house where the silver BMW pulled up.

(Tr. 59-60.) The Court further ruled that "[t]he detective[s] had more than a reasonable, articulable suspicion of unlawful activity. And therefore, if they had stopped the car, they would have been free to do so, it would have been a legal stop, and to make inquiry." (Tr. 60.)

---

[2] Detectives, in fact, believed that two other participants in the robbery/kidnapping – "Geraldo," or "German Cuadrado," and "Jorge" – lived at the Clifton Residence, not Camacho. (Tr. 17.)

6

**ARGUMENT**

I. **DEFENDANT'S REQUEST TO SUPPRESS HIS BULLETPROOF VEST SHOULD BE DENIED WITHOUT A HEARING**

        Rodriguez moves to suppress the bulletproof vest he was wearing when he was arrested on January 3, 2007, claiming that there was "no reasonable suspicion or probable cause to stop him and search his person." Rodriguez Supplemental Mot. to Suppress, Rinaldo Aff., at 2. Rodriguez filed an affidavit claiming that as he was exiting the vehicle in which he was a passenger, "a police officer grabbed me, ordered me to 'freeze,' and placed me against the passenger side of the vehicle and began to search me. At that time, the officer felt the bullet proof vest which I was wearing under my long sleeve tee shirt." Rodriguez Supplemental Mot. to Suppress, Rodriguez Aff. Rodriguez essentially claims that he was subjected to a Terry stop and frisk in the absence of reasonable suspicion.

        Under Terry v. Ohio, 392 U.S. 1, 21 (1968), police may briefly detain an individual for questioning if they have a reasonable suspicion that criminal activity is afoot, and may frisk him if they reasonably believe he is armed and dangerous. See, e.g., United States v. Elmore, 482 F.3d 172, 178-79 (2d Cir. 2007); United States v. Colon, 250 F.3d 130, 134 (2d Cir. 2001). In order to conduct a valid Terry stop and frisk, police "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably

7

warrant [an] intrusion." Terry, 392 U.S. at 21.  Reasonable suspicion is determined based on the totality of the circumstances, but the "likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." United States v. Arvizu, 534 U.S. 266, 273-74 (2002).

   The Court should deny Rodriguez's motion without a hearing, based on the findings and conclusions the Court has already made.  Even assuming the facts alleged by Rodriguez, there is no legal basis for the suppression of the bulletproof vest because, as set forth above, the Court made the finding at the April 2, 2008 suppression hearing that at the time the detectives encountered Rodriguez they had "more than a reasonable, articulable suspicion of criminal activity" (Tr. 60), and that "if this was a stop, it was a perfectly reasonable and lawful Terry stop," (Tr. 62).  Because the detectives were investigating an extremely violent crime where at least one victim had been struck with a gun, they had ample reason to believe their suspects were armed and dangerous, and therefore to frisk Rodriguez.  Indeed, the Court found that the "detectives who had been investigating the crime for four months . . . had reason after reason to assume and to believe that people who were involved with the crime were in fact in the silver car." (Tr. 61.)  Finally, the Court ruled that "even if [Rodriguez] had

8

standing, there's absolutely, absolutely no question that it was a lawful stop, a lawful detention, a lawful intrusion." (Tr. 66.)

Therefore, because the Court has already ruled that any Terry stop that occurred in this case was amply justified by reasonable and articulable suspicion that the occupants of the silver BMW were involved in the kidnapping and armed robbery being investigated, Rodriguez's motion to suppress his bulletproof vest should be denied without a hearing.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court deny defendant's motion to suppress his bulletproof vest without a hearing.

Dated:  New York, New York
        April 14, 2008

>           Respectfully submitted,
>
>           MICHAEL J. GARCIA
>           United States Attorney for the
>           Southern District of New York
>
>
>           By:        /s/
>           Nola B. Heller
>           Assistant United States Attorney
>           (212) 637-2631

**AFFIRMATION OF SERVICE**

NOLA B. HELLER, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

That I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York. That, on April 14, 2008, I caused copies of the Government's Second Memorandum of Law in Opposition to Defendants' Pretrial Motions to be delivered by ECF and Federal Express to:

> Paul Rinaldo, Esq.
> Grossman and Rinaldo
> 10818 Queens Boulevard
> Forest Hills, NY 11375

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:   New York, New York
         April 14, 2008

         _____/s/_____
         Nola B. Heller